(Slip Opinion)     OCTOBER TERM, 2004     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JOHNSON *v.* CALIFORNIA

CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA,
FIRST APPELLATE DISTRICT

No. 04–6964.   Argued April 18, 2005—Decided June 13, 2005

Petitioner Johnson, a black man, was convicted in a California state
court of assaulting and murdering a white child.  During jury selec-
tion, a number of prospective jurors were removed for cause until 43
eligible jurors remained, three of whom were black.  The prosecutor
used 3 of his 12 peremptory challenges to remove the prospective
black jurors, resulting in an all-white jury.  Defense counsel objected
to those strikes on the ground that they were unconstitutionally
based on race.  The trial judge did not ask the prosecutor to explain
his strikes, but instead simply found that petitioner had failed to es-
tablish a prima facie case of purposeful discrimination under the gov-
erning state precedent, *People* v. *Wheeler*, which required a showing
of a strong likelihood that the exercise of peremptory challenges was
based on group bias.  The judge explained that, although the case
was close, his review of the record convinced him that the prosecu-
tor's strikes could be justified by race-neutral reasons.  The Califor-
nia Court of Appeal set aside the conviction, but the State Supreme
Court reinstated it, stressing that *Batson* v. *Kentucky*, 476 U. S. 79,
permits state courts to establish the standards used to evaluate the
sufficiency of prima facie cases of purposeful discrimination in jury
selection.  Reviewing *Batson*, *Wheeler*, and their progeny, the court
concluded that *Wheeler*'s "strong likelihood" standard is entirely con-
sistent with *Batson*.  Under *Batson*, the court held, a state court may
require the objector to present not merely enough evidence to permit
an inference that discrimination has occurred, but sufficiently strong
evidence to establish that the challenges, if not explained, were more
likely than not based on race.  Applying that standard, the court ac-
knowledged that the exclusion of all three black prospective jurors
looked suspicious, but deferred to the trial judge's ruling.

*Held:* California's "more likely than not" standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case of purposeful discrimination in jury selection. This narrow but important issue concerns the scope of the first of three steps *Batson* enumerated: (1) Once the defendant has made out a prima facie case and (2) the State has satisfied its burden to offer permissible race-neutral justifications for the strikes, *e.g.,* 476 U. S., at 94, then (3) the trial court must decide whether the defendant has proved purposeful racial discrimination, *Purkett* v. *Elem*, 514 U. S. 765. *Batson* does not permit California to require at step one that the objector show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias. The *Batson* Court held that a prima facie case can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives "rise to an inference of discriminatory purpose." 476 U. S., at 94. The Court explained that to establish a prima facie case, the defendant must show that his membership in a cognizable racial group, the prosecutor's exercise of peremptory challenges to remove members of that group, the indisputable fact that such challenges permit those inclined to discriminate to do so, and any other relevant circumstances raise an inference that the prosecutor excluded venire members on account of race. *Id.,* at 96. The Court assumed that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the peremptory challenge was improperly motivated. The Court did not intend the first step to be so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies *Batson*'s first step requirements by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. The facts of this case illustrate that California's standard is at odds with the prima facie inquiry mandated by *Batson*. The permissible inferences of discrimination, which caused the trial judge to comment that the case was close and the California Supreme Court to acknowledge that it was suspicious that all three black prospective jurors were removed, were sufficient to establish a prima facie case. Pp. 10–11.

Reversed and remanded.

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. BREYER, J., filed a concurring opinion. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–6964

JAY SHAWN JOHNSON, PETITIONER *v.*
CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, FIRST APPELLATE DISTRICT

[June 13, 2005]

JUSTICE STEVENS delivered the opinion of the Court.

The Supreme Court of California and the United States Court of Appeals for the Ninth Circuit have provided conflicting answers to the following question: "Whether to establish a *prima facie* case under *Batson* v. *Kentucky,* 476 U. S. 79 (1986), the objector must show that it is more likely than not that the other party's peremptory challenges, if unexplained, were based on impermissible group bias?" Pet. for Cert. i. Because both of those courts regularly review the validity of convictions obtained in California criminal trials, respondent, the State of California, agreed to petitioner's request that we grant certiorari and resolve the conflict. We agree with the Ninth Circuit that the question presented must be answered in the negative, and accordingly reverse the judgment of the California Supreme Court.

I

Petitioner Jay Shawn Johnson, a black male, was convicted in a California trial court of second-degree murder and assault on a white 19-month-old child, resulting in death. During jury selection, a number of prospective jurors were removed for cause until 43 eligible jurors

remained, 3 of whom were black. The prosecutor used 3 of his 12 peremptory challenges to remove the black prospective jurors. The resulting jury, including alternates, was all white.

After the prosecutor exercised the second of his three peremptory challenges against the prospective black jurors, defense counsel objected on the ground that the challenge was unconstitutionally based on race under both the California and United States Constitutions. *People* v. *Johnson*, 30 Cal. 4th 1302, 1307, 71 P. 3d 270, 272–273 (2003).[1] Defense counsel alleged that the prosecutor "had no apparent reason to challenge this prospective juror 'other than [her] racial identity.'" *Ibid.* (alteration in original). The trial judge did not ask the prosecutor to explain the rationale for his strikes. Instead, the judge simply found that petitioner had failed to establish a prima facie case under the governing state precedent, *People* v. *Wheeler*, 22 Cal. 3d 258, 583 P. 2d 748 (1978), reasoning "'that there's not been shown a *strong likelihood* that the exercise of the peremptory challenges were based upon a group rather than an individual basis,'" 30 Cal. 4th, at 1307, 71 P. 3d, at 272 (emphasis added). The judge did, however, warn the prosecutor that "'we are very close.'" *People* v. *Johnson*, 105 Cal. Rptr. 2d 727, 729 (2001).

Defense counsel made an additional motion the next day when the prosecutor struck the final remaining prospective black juror. 30 Cal. 4th, at 1307, 71 P. 3d, at 272. Counsel argued that the prosecutor's decision to challenge all of the prospective black jurors constituted a "systematic attempt to exclude African-Americans from the jury panel." 105 Cal. Rptr. 2d, at 729. The trial judge still did not seek an explanation from the prosecutor. Instead, he

---

[1] Petitioner's state objection was made under *People* v. *Wheeler*, 22 Cal. 3d 258, 583 P. 2d 748 (1978).

explained that his own examination of the record had convinced him that the prosecutor's strikes could be justified by race-neutral reasons. Specifically, the judge opined that the black venire members had offered equivocal or confused answers in their written questionnaires. 30 Cal. 4th, at 1307–1308, 71 P. 3d, at 272–273. Despite the fact that "'the Court would not grant the challenges for cause, there were answers . . . at least on the questionnaires themselves [such] that the Court felt that there was sufficient basis'" for the strikes. *Id.*, at 1308, 71 P. 3d, at 273 (brackets added). Therefore, even considering that all of the prospective black jurors had been stricken from the pool, the judge determined that petitioner had failed to establish a prima facie case.

The California Court of Appeal set aside the conviction. *People* v. *Johnson*, 105 Cal. Rptr. 2d 727 (2001). Over the dissent of one judge, the majority ruled that the trial judge had erred by requiring petitioner to establish a "strong likelihood" that the peremptory strikes had been impermissibly based on race. Instead, the trial judge should have only required petitioner to proffer enough evidence to support an "inference" of discrimination.[2] The Court of Appeal's holding relied on decisions of this Court, prior California case law, and the decision of the United States Court of Appeals for the Ninth Circuit in *Wade* v. *Terhune*, 202 F. 3d 1190 (2000). Applying the proper "reasonable inference" standard, the majority concluded that petitioner had produced sufficient evidence to support a prima facie case.

Respondent appealed, and the California Supreme Court reinstated petitioner's conviction over the dissent of

——————————

[2] In reaching this holding, the Court of Appeal rejected the notion that a showing of a "'strong likelihood'" is equivalent to a "'reasonable inference.'" To conclude so would "be as novel a proposition as the idea that 'clear and convincing evidence' has always meant a 'preponderance of the evidence.'" 105 Cal. Rptr. 2d, at 733.

two justices. The court stressed that *Batson* v. *Kentucky*, 476 U. S. 79 (1986), left to state courts the task of establishing the standards used to evaluate the sufficiency of defendants' prima facie cases. 30 Cal. 4th, at 1314, 71 P. 3d, at 277. The court then reviewed *Batson*, *Wheeler*, and those decisions' progeny, and concluded that "*Wheeler*'s terms 'strong likelihood' and 'reasonable inference' state the same standard"—one that is entirely consistent with *Batson*. 30 Cal. 4th, at 1313, 71 P. 3d, at 277. A prima facie case under *Batson* establishes a "'legally mandatory, rebuttable presumption,'" it does not merely constitute "enough evidence to *permit the inference*" that discrimination has occurred. 30 Cal. 4th, at 1315, 71 P. 3d, at 278. *Batson*, the court held, "permits a court to require the objector to present, not merely 'some evidence' permitting the inference, but 'strong evidence' that makes discriminatory intent *more likely than not* if the challenges are not explained." 30 Cal. 4th, at 1316, 71 P. 3d, at 278. The court opined that while this burden is "not onerous," it remains "substantial." *Ibid.*, 71 P. 3d, at 279.

Applying that standard, the court acknowledged that the case involved the "highly relevant" circumstance that a black defendant was "charged with killing 'his White girlfriend's child,'" and that "it certainly looks suspicious that all three African-American prospective jurors were removed from the jury." *Id.,* at 1326, 71 P. 3d, at 286. Yet petitioner's *Batson* showing, the court held, consisted "primarily of the statistical disparity of peremptory challenges between African-Americans and others." 30 Cal. 4th, at 1327, 71 P. 3d, at 287. Although those statistics were indeed "troubling and, as the trial court stated, the question was close," *id.*, at 1328, 71 P. 3d, at 287, the court decided to defer to the trial judge's "carefully considered ruling." *Ibid.*[3] We granted certiorari, but dismissed the

---

[3] In dissent, Justice Kennard argued that "[r]equiring a defendant to

case for want of jurisdiction because the judgment was not yet final. *Johnson* v. *California,* 541 U. S. 428 (2004) *(per curiam).* After the California Court of Appeal decided the remaining issues, we again granted certiorari. 543 U. S. ___ (2005).

## II

The issue in this case is narrow but important. It concerns the scope of the first of three steps this Court enumerated in *Batson*, which together guide trial courts' constitutional review of peremptory strikes. Those three *Batson* steps should by now be familiar. First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." 476 U. S., at 93–94 (citing *Washington* v. *Davis*, 426 U. S. 229, 239–242 (1976)).[4] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. 476 U. S., at 94; see also *Alexander* v. *Louisiana*, 405 U. S. 625, 632 (1972). Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Purkett* v.

——————

persuade the trial court of the prosecutor's discriminatory purpose at the first *Wheeler-Batson* stage short-circuits the process, and provides inadequate protection for the defendant's right to a fair trial . . . ." 30 Cal. 4th, at 1333, 71 P. 3d, at 291. The proper standard for measuring a prima facie case under *Batson* is whether the defendant has identified actions by the prosecutor that, "*if unexplained,* permit a reasonable inference of an improper purpose or motive." 30 Cal. 4th, at 1339, 71 P. 3d, at 294. Trial judges, Justice Kennard argued, should not speculate when it is not "apparent that the [neutral] explanation was the true reason for the challenge." *Id.*, at 1340, 71 P. 3d, at 295.

[4] An "inference" is generally understood to be a "conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary 781 (7th ed. 1999).

*Elem*, 514 U. S. 765, 767 (1995) *(per curiam).*

The question before us is whether *Batson* permits California to require at step one that "the objector must show that it is more likely than not the other party's peremptory challenges, if unexplained, were based on impermissible group bias." 30 Cal. 4th, at 1318, 71 P. 3d, at 280. Although we recognize that States do have flexibility in formulating appropriate procedures to comply with *Batson*, we conclude that California's "more likely than not" standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case.

We begin with *Batson* itself, which on its own terms provides no support for California's rule. There, we held that a prima facie case of discrimination can be made out by offering a wide variety of evidence,[5] so long as the sum of the proffered facts gives "rise to an inference of discriminatory purpose." 476 U. S., at 94. We explained that

> "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute,

---

[5] In *Batson*, we spoke of the methods by which prima facie cases could be proved in permissive terms. A defendant may satisfy his prima facie burden, we said, "by relying solely on the facts concerning [the selection of the venire] *in his case*." 476 U. S., at 95 (emphasis in original). We declined to require proof of a pattern or practice because "'[a] single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.'" *Ibid.* (quoting *Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U. S. 252, 266, n. 14 (1977)).

that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.,* at 96 (citations omitted) (quoting *Avery* v. *Georgia,* 345 U. S. 559, 562 (1953)).

Indeed, *Batson* held that because the petitioner had timely objected to the prosecutor's decision to strike "all black persons on the venire," the trial court was in error when it "flatly rejected the objection without requiring the prosecutor to give an explanation for his action." 476 U. S., at 100. We did not hold that the petitioner had proved discrimination. Rather, we remanded the case for further proceedings because the trial court failed to demand an explanation from the prosecutor—*i.e.,* to proceed to *Batson*'s second step—despite the fact that the petitioner's evidence supported *an inference* of discrimination. *Ibid.*

Thus, in describing the burden-shifting framework, we assumed in *Batson* that the trial judge would have the benefit of all relevant circumstances, including the prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated. We did not intend the first step to be so onerous that a defendant would have to persuade the judge—on the basis of all the facts, some of which are impossible for the defendant to know with certainty—that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.

Respondent, however, focuses on *Batson*'s ultimate sentence: "If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed." *Ibid.* For this to be true, respondent contends, a *Batson* claim must prove the ultimate facts by a preponderance of the evidence in the prima facie case; otherwise, the argument goes, a prosecutor's failure to respond to a prima facie case would inexplicably entitle a defendant to judgment as a matter of law on the basis of nothing more than an inference that discrimination may have occurred. Brief for Respondent 13–18.

Respondent's argument is misguided. *Batson*, of course, explicitly stated that the defendant ultimately carries the "burden of persuasion" to "'prove the existence of purposeful discrimination.'" 476 U. S., at 93 (quoting *Whitus* v. *Georgia*, 385 U. S. 545, 550 (1967)). This burden of persuasion "rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U. S., at 768. Thus, even if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end—it merely proceeds to step three. *Ibid.*[6] The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim. "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the

_____

[6] In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge's inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant's prima facie case. Cf. *United States ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U. S. 103, 111 (1927).

step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett, supra,* at 768.[7]

*Batson*'s purposes further support our conclusion. The constitutional interests *Batson* sought to vindicate are not limited to the rights possessed by the defendant on trial, see 476 U. S., at 87, nor to those citizens who desire to participate "in the administration of the law, as jurors," *Strauder* v. *West Virginia,* 100 U. S. 303, 308 (1880). Undoubtedly, the overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race. Yet the "harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson*, 476 U. S., at 87; see also *Smith* v. *Texas*, 311 U. S. 128, 130 (1940) ("For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted

_____

[7] This explanation comports with our interpretation of the burden-shifting framework in cases arising under Title VII of the Civil Rights Act of 1964. See, *e.g., Furnco Constr. Corp.* v. *Waters,* 438 U. S. 567, 577 (1978) (noting that the *McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792 (1973), framework "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination"); see also *St. Mary's Honor Center* v. *Hicks*, 509 U. S. 502, 509–510, and n. 3 (1993) (holding that determinations at steps one and two of the *McDonnell Douglas* framework "can involve no credibility assessment" because "the burden-of-production determination necessarily *precedes* the credibility-assessment stage," and that the burden-shifting framework triggered by a defendant's prima face case is essentially just "a means of 'arranging the presentation of evidence'" (quoting *Watson* v. *Fort Worth Bank & Trust*, 487 U. S. 977, 986 (1988)).

under it but it is at war with our basic concepts of a democratic society and a representative government" (footnote omitted)).

The *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. See 476 U. S., at 97–98, and n. 20. The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question. See *Paulino* v. *Castro*, 371 F. 3d 1083, 1090 (CA9 2004) ("[I]t does not matter that the prosecutor might have had good reasons . . . [w]hat matters is the real reason they were stricken" (emphasis deleted)); *Holloway* v. *Horn*, 355 F. 3d 707, 725 (CA3 2004) (speculation "does not aid our inquiry into the reasons the prosecutor actually harbored" for a peremptory strike). The three-step process thus simultaneously serves the public purposes *Batson* is designed to vindicate and encourages "prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process." *Hernandez* v. *New York*, 500 U. S. 352, 358–359 (1991) (opinion of KENNEDY, J.).

The disagreements among the state-court judges who reviewed the record in this case illustrate the imprecision of relying on judicial speculation to resolve plausible claims of discrimination. In this case the inference of discrimination was sufficient to invoke a comment by the trial judge "that 'we are very close,'" and on review, the California Supreme acknowledged that "it certainly looks suspicious that all three African-American prospective jurors were removed from the jury." 30 Cal. 4th, at 1307, 1326, 71 P. 3d, at 273, 286. Those inferences that discrimination may have occurred were sufficient to establish a prima facie case under *Batson*.

The facts of this case well illustrate that California's

"more likely than not" standard is at odds with the prima facie inquiry mandated by *Batson*. The judgment of the California Supreme Court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered*

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–6964

_____

## JAY SHAWN JOHNSON, PETITIONER *v.* CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF
CALIFORNIA, FIRST APPELLATE DISTRICT

[June 13, 2005]

JUSTICE BREYER, concurring.

I join the Court's opinion while maintaining here the views I set forth in my concurring opinion in *Miller-El* v. *Dretke, post,* p.\_\_\_.

# SUPREME COURT OF THE UNITED STATES

_____

No. 04–6964

_____

## JAY SHAWN JOHNSON, PETITIONER *v.* CALIFORNIA

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL OF CALIFORNIA, FIRST APPELLATE DISTRICT

[June 13, 2005]

JUSTICE THOMAS, dissenting.

The Court says that States "have flexibility in formulating appropriate procedures to comply with *Batson* [v. *Kentucky*, 476 U. S. 79 (1986)]," *ante*, at 6, but it then tells California how to comply with "the prima facie inquiry mandated by *Batson*," *ante*, at 11. In *Batson* itself, this Court disclaimed any intent to instruct state courts on how to implement its holding. 476 U. S., at 99 ("We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges"); *id.*, at 99–100, n. 24. According to *Batson*, the Equal Protection Clause requires that prosecutors select juries based on factors other than race—not that litigants bear particular burdens of proof or persuasion. Because *Batson*'s burden-shifting approach is "a prophylactic framework" that polices racially discriminatory jury selection rather than "an independent constitutional command," *Pennsylvania* v. *Finley,* 481 U. S. 551, 555 (1987), States have "wide discretion, subject to the minimum requirements of the Fourteenth Amendment, to experiment with solutions to difficult problems of policy," *Smith* v. *Robbins,* 528 U. S. 259, 273 (2000); *Dickerson* v. *United States,* 530 U. S. 428, 438–439 (2000). California's procedure falls comfortably within its broad discretion to craft its own rules of criminal procedure, and I therefore respectfully dissent.